825 F.2d 1521
 Fed. Sec. L. Rep. P 93,403, 8 Fed.R.Serv.3d 840
 Myles OSTERNECK, et al., Plaintiffs-Appellants, Cross-Appellees,
v.
E.T. BARWICK INDUSTRIES, INC., Defendant.
E.T. Barwick, Defendant,
M.E. Kellar, Defendant-Appellant, Cross-Appellee,
Buford Talley, Defendant-Appellant, Cross- Appellee,
Ernst & Whinney, Defendant-Appellee, Cross-Appellant.
Myles OSTERNECK, et al., Plaintiffs-Appellees,
v.
E.T. BARWICK INDUSTRIES, INC., et al., Defendants,
Ernest & Whinney, Defendant-Appellant,
Myles OSTERNECK, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
E.T. BARWICK INDUSTRIES, INC., Defendants
Melvin E. Kellar and Buford A. Talley,
Defendants-Appellants, Cross-Appellees,
 Nos. 85-8165, 85-8523 and 85-8593.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 31, 1987.
 
 Harold T. Daniel, John G. Parker, Paul Webb, Jr., Atlanta, Ga., for Osterneck et al.
 Susan Hoy, Atlanta, Ga., for Kellar.
 R. Hal Meeks, Jr., Peter J. Anderson, S. Lawrence Polk, Atlanta, Ga., for Talley.
 Richard M. Kirby, Atlanta, Ga., for Ernst & Whinney.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 Over seventeen years ago, in September 1969, Cavalier Bag Company, Inc. merged into E.T. Barwick Industries, a subsidiary of the Barwick Corporation. Various members of the Osterneck family, plaintiffs in this action, were, at that time, owners of Cavalier. Pursuant to the merger, the Osternecks exchanged their stock in Cavalier for Barwick Industries stock.
 
 
 2
 Sometime later the Osternecks became aware of allegedly fraudulent misrepresentations made to them in order to secure their approval of the merger. Specifically, they came to believe that Barwick Industries' financial statements for the two years preceding the merger misrepresented the company's financial condition. Consequently, on September 4, 1975, the Osternecks began this action alleging violations of Secs. 10(b) and 20 of the Securities Act of 1934 (15 U.S.C. Secs. 78j(b), 78t), Rule 10(b)(5) thereunder (17 C.F.R. Sec. 240.10b-5) and the common law of Georgia.
 
 
 3
 Besides Barwick Industries, the Osternecks named as defendants several other individuals and organizations. Of these only four remain parties to this appeal: E.T. Barwick, B.A. Talley, and M.E. Kellar, who were directors and officers of Barwick Industries prior to or during the merger and Ernst & Whinney ("E & W"), the accountants responsible for preparing the allegedly fraudulent statements misrepresenting the financial condition of Barwick Industries.[1]
 
 
 4
 Following almost ten years of discovery, this case finally went to trial in October, 1984. After three and a half months of testimony, the jury returned a verdict against defendants Barwick Industries, M.E. Kellar, and B.A. Talley in the amount of $2,632,234 as compensatory damages for violations of federal securities law and Georgia state common law. Judgment was entered in favor of E & W and E.T. Barwick, individually. Subsequently, the district court awarded the Osternecks prejudgment interest on their federal securities claim in the amount of $945,512.85. These consolidated appeals ensued.
 
 
 5
 Tangled procedural maneuvering has created three separate appellate cases. For clarity's sake we briefly characterize them here: Case No. 85-8165 involves the Osternecks' appeal from all judgments rendered against them and includes the cross-appeals of most of the defendants. Case No. 85-8593 involves only the appeal by Barwick Industries, E.T. Barwick, Talley and Kellar and the Osternecks' cross-appeal against those parties. Case No. 85-8523 is an appeal by E & W from the district court's denial of expert fees in E & W's bill of costs.
 
 I. JURISDICTION
 
 6
 As an initial matter, we confront several difficult jurisdictional questions. These difficulties arise out of the complicated procedural maneuvering which occurred following the initial entry of judgment against defendants Barwick Industries, Kellar and Talley. This first judgment for over two and a half million dollars was entered on January 30, 1985. At that time the Osternecks moved orally for the award of prejudgment interest. On February 11, 1985, the Osternecks filed a written motion for prejudgment interest. During March 1985, the various parties filed notices of appeal and cross-appeal challenging the January 30, 1985 judgment, including the Osternecks' March 1, 1985 notice of appeal.[2] It was not, however, until July 1 that the district court entered an order ruling upon the Osternecks' February 11 motion and awarding the Osternecks over $945,000 in prejudgment interest. A separate judgment, captioned as an "amended judgment," was entered on July 9. Following this amended judgment various notices of appeal and cross-appeal were filed. The Osternecks' filed only a single notice of appeal on July 31, 1985, which was captioned as a cross-appeal against Kellar, Talley, E.T. Barwick and Barwick Industries. The notice did not designate E & W as a party to the appeal.[3]
 
 A. Case Nos. 85-8165 & 85-8593
 
 7
 These cases raise two interrelated jurisdictional issues. First, we must examine the effect and validity of the Osternecks' March 1, 1985 notice of appeal, and the other appeals and cross-appeals filed by the defendants during March 1985. The parties agree that if these notices were effective they would be sufficient to raise all issues the Osternecks seek to litigate on appeal. However, defendants Talley, Kellar, and E & W contend that these notices were ineffective because they were filed while a Rule 59(e) motion was pending before the district court. If the Osternecks' March 1, 1985 notice of appeal, and the other appeals and crossappeals filed in March 1985 are deemed ineffective, we must next decide whether the Osternecks' second notice of appeal filed on July 31, 1985, effectively preserved all issues for appeal.[4] Defendants Talley, Kellar, and E & W argue that this second notice of appeal did not preserve all the issues which the Osternecks now seek to litigate.[5]
 
 
 8
 It is settled law that a notice of appeal filed while a motion to alter or amend the judgment under Rule 59(e) is pending can have no effect. See Fed.R.App.P. 4(a)(4);[6] see also Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); Robinson v. Tanner, 798 F.2d 1378, 1385 (11th Cir.1986). Thus, the jurisdictional question posed by this case is a clear one: should the Osternecks' February 11 motion for prejudgment interest be characterized as a motion, pursuant to Fed.R.Civ.P. 59(e), to alter or amend the district court's judgment. Because we conclude that this motion for discretionary prejudgment interest is properly characterized as a motion to alter or amend a final judgment of the district court, all notices filed in this case prior to the ruling on that motion, i.e., July 9, 1985, have no effect.
 
 
 9
 Our conclusion that a motion for prejudgment interest is a Rule 59(e) motion is influenced by several factors. First and foremost amongst these is the settled treatment of such motions by the other circuit courts of appeal. They have uniformly concluded that a motion for discretionary prejudgment interest must be filed pursuant to Rule 59(e). See Stern v. Shouldice, 706 F.2d 742, 746-47 (6th Cir.), cert. denied, 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983); Goodman v. Heublein, Inc., 682 F.2d 44, 45-47 (2d Cir.1982); Scola v. Boat Frances, R., Inc., 618 F.2d 147, 152-54 (1st Cir.1980).
 
 
 10
 This result may be easily explained. The discretionary award of prejudgment interest requires the district court to substantively reconsider its original judgment. This is precisely the sort of alteration or amendment contemplated by Rule 59(e). Such substantive modifications must be sought within ten days of the entry of judgment[7] and any decision rendered prior to disposition of the motion is not final for purposes of appeal. The rules of appellate procedure are designed to prevent precisely what has occurred in this case--the piecemeal appeal of nonfinal substantive judgments rendered by the district court.[8]
 
 
 11
 The Osternecks argue, however, that their motion is not within the scope of Rule 59(e) because it addresses an issue collateral to the main cause of action. As support for this proposition, they cite White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), in which the Supreme Court held that a post-judgment motion for an award of attorney's fees under 42 U.S.C. Sec. 1988 was not governed by Rule 59(e).
 
 
 12
 Reliance upon White is misplaced. In White, the Court noted that an award of attorney's fees under Sec. 1988 is "uniquely separable" from the main cause of action and, " 'does not imply a change in the judgment.' " Id. at 452, 102 S.Ct. at 1166 (quoting Knighton v. Watkins, 616 F.2d 795, 797 (5th Cir.1980)). Our circuit has interpreted this to mean that Rule 59(e) applies only when a motion seeks reconsideration of substantive issues resolved in the judgment and not when a motion raises exclusively collateral questions regarding what is due because of the judgment. See Lucas v. Florida Power & Light Co., 729 F.2d 1300, 1301 (11th Cir.1984). Thus, we have even concluded that the issue of attorney's fees is not always collateral to the action. When the liability for the award arises from a substantive contractual obligation and is "an integral part of the merits of the case" and therefore " 'compensation for the injury giving rise to an action,' " a motion for the inclusion of attorney's fees is a Rule 59(e) motion and tolls the time period for appeal. C.I.T. Corp. v. Nelson, 743 F.2d 774, 775 (11th Cir.1984) (quoting White, 455 U.S. at 452, 102 S.Ct. at 1166-67); accord Beckwith Machinery Co. v. Travelers Indemnity Co., 815 F.2d 286 (3d Cir.1987). But see Exchange Nat'l Bank v. Daniels, 763 F.2d 286, 292-94 (7th Cir.1985).
 
 
 13
 It cannot be doubted that prejudgment interest is compensation which directly stems from the injury giving rise to the action. Norte & Co. v. Huffines, 416 F.2d 1189, 1191 (2d Cir.1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). Thus, a motion to award prejudgment interest requests a substantive alteration of a court's judgment and must be made pursuant to Rule 59(e). Hence, in the instant case, the district court's judgment was not made final until the entry of its amended judgment on July 9, 1985, and all notices of appeal filed prior to that date were ineffective.[9]
 
 
 14
 In order to avoid the effects of this ruling, the Osternecks argue that their original notices of appeal and cross-appeal filed in March are, nonetheless, effective because they fall within the scope of two special exceptions which validate premature notices of appeal. First, they argue that an interlocutory appeal from a nonfinal decision may, nonetheless, be treated as an appeal from a final order if the nonfinal judgment has subsequently been finalized. See Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1231 (5th Cir.1973);[10] cf. Anderson v. Allstate Insurance Co., 630 F.2d 677, 680-81 (9th Cir.1980). However, Jetco holds only that a "premature notice of appeal is valid if filed from an order dismissing a claim or party and followed by a subsequent final judgment without a new notice of appeal being filed." Robinson, 798 F.2d at 1385 (footnote omitted). In this case, the earlier nonfinal order was not one which dismissed a claim or a party. Rather, it only rendered judgment upon a jury verdict. Thus, the Osternecks' premature appeal does not fall within the scope of the Jetco rule. Moreover, in Martin v. Campbell, 692 F.2d 112, 114-16 (11th Cir.1982), this court determined that Jetco could not validate a premature notice of appeal which was filed while a Rule 59 motion was pending. We concluded that Fed.R.App.P. 4(a)(4) spoke directly to the validity of such appeals and precluded validation of a premature notice under Jetco 's equitable exception.
 
 
 15
 As a final argument, the Osternecks contend that they fall within the "unique circumstances" exception to the timely appeal requirement. This exception, developed by the Supreme Court in Thompson v. Immigration & Naturalization Service, 375 U.S. 384 (1964) (per curiam), commands that an appellate court "should hear an appeal even though it is not timely, if the appellant reasonably relied on an erroneous statement of the district court that the appeal ... was timely, and the appeal would have been timely if the district court had been correct." Marane, Inc. v. McDonald's Corp., 755 F.2d 106, 111 n. 2 (7th Cir.1985) (citation omitted).
 
 
 16
 The Osternecks contend that they have relied upon several actions of the district court which indicated that the January 30, 1985 judgment was final and appealable. These include the district court's subsequent orders granting E & W's bill of costs, denying E.T. Barwick's motion for an extension of time to file its bill of costs, and denying E.T. Barwick Industries' motion to stay the execution of the January 30 judgment. In addition, the clerk of the district court required the Osternecks to pay an additional filing fee for their notice of cross-appeal filed after the district court's July 9 amended judgment. The Osternecks argue that this requirement indicates that the clerk did not treat the Osternecks' motion for prejudgment interest as a motion under Rule 59. Had the clerk believed that a Rule 59 motion had been made he would have acted pursuant to Fed.R.App.P. 4(a)(4) which provides that no additional fees shall be required for a second notice of appeal filed after a Rule 59 motion has been ruled upon. Finally, the Osternecks contend that they relied upon this court's failure to originally notify them that jurisdiction was questionable.
 
 
 17
 We do not believe that any of these factors are sufficient to create the "unique circumstances" necessary to validate a premature appeal. At no time has the district court or this court ever affirmatively represented to the Osternecks that their appeal was timely filed, nor did the Osternecks ever seek such an assurance from either court. Indeed, the Thompson exception is designed to permit an appeal when a party has done an act which, if properly done, would postpone the deadline for filing his appeal and has been assured by a judicial officer that this act has been properly done. Thompson, 375 U.S. at 387. The Osternecks do not suggest that any court officer has ever assured them that they have been granted an extension of time within which to file an appeal.[11]
 
 
 18
 For the foregoing reasons, we conclude that we do not have jurisdiction to hear the appeal in Case No. 85-8165 (i.e., the Osternecks' March 1, 1985 appeal and the defendants' cross-appeals during March 1985). That appeal is accordingly ordered dismissed.[12]
 
 
 19
 Having concluded that all of the notices of appeal filed prior to the district court's amended judgment on July 9, 1985 are ineffective, we must next determine the efficacy of the Osternecks' subsequent notice of cross-appeal filed on July 31, 1985. The Osternecks contend that, even though their appeal in Case No. 85-8165 may be dismissed, all the issues they seek to litigate in that appeal are preserved for litigation in Case No. 85-8593 by their July 31 notice. By its terms, however, this notice of cross-appeal does not expressly raise any issues for appeal against E & W. E & W contends that the failure to name them in the notice of appeal renders the notice ineffective insofar as it seeks to raise any issues on appeal against E & W. We agree.
 
 
 20
 The general rule in this circuit is that an appellate court has jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal. See Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1374-75 (11th Cir.), cert. denied, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); Fed.R.App.P. 3(c) (requiring that a notice of appeal "designate the judgment, order or part thereof appealed from"). But see Lynn v. Sheet Metal Workers, 804 F.2d 1472, 1481 (9th Cir.1986). Although we generally construe a notice of appeal liberally, we will not expand it to include judgments and orders not specified unless the overriding intent to appeal these orders is readily apparent on the face of the notice. We have previously concluded that, where some portions of a judgment and some orders are expressly made a part of the appeal, we must infer that the appellant did not intend to appeal other unmentioned orders or judgments. Mestre, 701 F.2d at 1374-75; see also C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1055-56 (5th Cir.), cert. denied, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981).[13]
 
 
 21
 We conclude that an analogous rule should apply when an appellant expressly names some of his opponents but fails to include other opposing parties within the notice of appeal. See Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252 (3d Cir.1977) (denying appellate jurisdiction with respect to defendants not named in notice of appeal); Parrish v. Board of Commissioners, 505 F.2d 12, 15-16 (5th Cir.1974) (notice naming appellants "PARRISH, ET AL., Plaintiffs" sufficient to demonstrate that all plaintiffs intended to appeal), vacated, 509 F.2d 540, reh'g en banc, 524 F.2d 98 (1975), on remand, 533 F.2d 942, 945 (1976) (deeming issue mooted by filing of curative notice of appeal). Since the text of the Osternecks' July 31, 1985 notice, see supra note 3, expressly preserves an appeal against Barwick, Barwick Industries, Talley and Kellar, we must, by inference, conclude that the Osternecks chose to forego any appeal against E & W.
 
 
 22
 Moreover, to now permit the Osternecks to use their July 31 notice as a vehicle for an appeal against E & W would unfairly prejudice E & W. No doubt relying upon the Osternecks' failure to appeal the judgment in its favor, E & W has foregone any cross-appeal it might have had. A cross-appeal, had one been filed, could have raised many of the issues which we will address in connection with Case No. 85-8593. Indeed, when the Osternecks had earlier appeared to perfect an appeal against E & W by their March 1 notice of appeal, E & W promptly filed a notice of cross-appeal on March 15. Thus, it is evident that E & W has reasonably relied upon the fact that the Osternecks did not name them in their July 31 notice. To allow the Osternecks to now use that notice to raise an appeal against E & W would be inequitable. Consequently, the issues the Osternecks seek to litigate against E & W are not preserved in Case No. 85-8593.
 
 
 23
 As our discussion makes plain, however, we do have jurisdiction over Case No. 85-8593, because the notices of appeal were filed after the district court entered its final judgment. The scope of these notices expressly embraces the appeals by Barwick Industries, E.T. Barwick, Talley and Kellar as well as the Osternecks' July 31, 1985 cross-appeal against those parties. Talley and Kellar have argued that the Osternecks' second notice specified only that portion of the final judgment relating to prejudgment interest and thus did not raise against them any issues other than the propriety of the prejudgment interest award expressly mentioned in the notice. We need not address this argument, however, because in this appeal against Talley and Kellar, the Osternecks have briefed only the prejudgment issue and have, consequently, abandoned any other assignments of error against Talley and Kellar. Harris v. Plastics Manufacturing Co., 617 F.2d 438, 440 (5th Cir.1980). All parties agree that the July 31, 1985 notice was sufficient to permit the Osternecks to appeal from the district court's order which awarded prejudgment interest only on the federal securities claim and reduced by two-thirds the amount of interest requested by the Osternecks. Thus, all issues raised by the Osternecks in case No. 85-8593 against Talley and Kellar are properly before us, as well as the issues raised by the Talley and Kellar appeals, and we have jurisdiction to hear the case.[14]
 
 B. Case No. 85-8523
 
 24
 This case presents a slightly different issue of appellate jurisdiction. On May 22, 1985, while the Osternecks' motion for prejudgment interest was pending before the district court, the district court ruled on E & W's motion for costs incurred while successfully defending against the Osternecks' action. In this order, the district court concluded that it was without authority to award fees for expert witnesses beyond the nominal statutory amount recoverable under 28 U.S.C. Sec. 1821.[15] On June 21, 1985, E & W appealed from the district court's May 22 order.
 
 
 25
 Though orders awarding or denying costs are not ordinarily appealable, Newton v. Consolidated Gas Co., 265 U.S. 78, 82-83, 44 S.Ct. 481, 482-83, 68 L.Ed. 909 (1924), when the refusal to tax an item of cost is not based upon an exercise of discretion but rather upon a district court's conclusion that it lacked the power to tax costs that order is appealable. See McWilliams Dredging Co. v. Department of Highways, 187 F.2d 61 (5th Cir.1951). Moreover, it is evident that an appeal respecting costs is an appeal of a collateral matter which does not seek reconsideration of substantive issues before the court. Lucas, 729 F.2d at 1301. Thus, our analysis above suggests that E & W's appeal is of a collateral matter and that a request for costs is not a motion under Rule 59(e).
 
 
 26
 This, however, does not dispose of the question. Simply because an order, such as an order taxing costs, is generally appealable it does not follow that any particular order is appealable. In this case, the order appealed from was entered prior to the district court's final disposition of all substantive issues in the case. This exactly reverses the typical procedure contemplated by Fed.R.Civ.P. 58, which provides that "[e]ntry of the judgment shall not be delayed for the taxing of costs."
 
 
 27
 By statutory authority, this court has jurisdiction only of appeals from final decisions of the district courts. 28 U.S.C. Sec. 1291.[16] We may not hear appeals even from fully consummated decisions when they are but steps towards a final judgment into which they merge. We see no reason for concluding that the order taxing costs against the Osternecks was anything but such an intermediate step that merged into the subsequent July 9 final judgment of the district court and was appealable only at that time. Hence, E & W's appeal must be dismissed as an appeal from a nonfinal order of the district court.
 
 
 28
 Nor can E & W seek to avoid the finality rule by application of the Cohen doctrine. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (permitting appeal of certain nonfinal collateral issues). In the first place, it is not at all apparent that the Cohen doctrine can ever apply to notices of appeal filed during the pendency of a Rule 59 motion, such as the Osternecks' motion for prejudgment interest in this case. By its very terms, Rule 4(a)(4) mandates that "the time for appeal for all parties" shall run from the entry of an order granting or denying a Rule 59 motion. Fed.R.App.P. 4(a)(4) (emphasis supplied). Thus, one might conclude that the express terms of Rule 4(a)(4) render any notice of appeal filed during the pendency of a Rule 59 motion a nullity, no matter what that notice's otherwise appealable character.
 
 
 29
 We need not sweep so broadly in our ruling, however. Indeed we assume arguendo that the Cohen doctrine, if applicable, would validate a notice of appeal from a nonfinal collateral order filed during the pendency of a Rule 59 motion. However, it is evident that E & W's appeal of the order taxing costs does not meet the stringent requirements of the Cohen doctrine. In order for a nonfinal order to be appealable as a collateral matter under the Cohen doctrine, it must be clear that awaiting a timely appeal from the complete final judgment would effectively prevent review of the order in question. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978); Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26. No suggestion has been made, nor could one be, that the district court's order taxing costs would be unreviewable had E & W awaited final judgment before taking its appeal. Consequently, the Cohen doctrine is inapplicable.
 
 
 30
 For the foregoing reasons we conclude that the appeal in Case No. 85-8523 must be dismissed for want of jurisdiction because it is an appeal from a nonfinal order of the district court.
 
 II. CASE NO. 85-8593--THE MERITS
 
 31
 Having concluded that we have jurisdiction only to determine the merits of Case No. 85-8593, we now turn our attention to the issues presented in that case. No. 85-8593 involves the issues raised by Talley and Kellar in their appeals,[17] and the prejudgment interest issue raised by the Osternecks in their cross-appeal.[18]
 
 
 32
 On appeal, Talley argues: (1) that the district court improperly charged the jury with a four-year statute of limitations for the federal securities law claims; (2) that consequently, since prejudgment interest is not available under Georgia law, the award of prejudgment interest made by the district court under the federal securities law must be vacated; (3) that the district court improperly imposed upon him the burden of rebutting the Osternecks' bill of costs; and (4) that the district court erred in allowing his codefendants to cross-examine him when he testified at trial.
 
 
 33
 Appellant Kellar raises the following issues: (1) that the district court improperly charged a four-year statute of limitations on the federal securities claims; (2) that the district court erred in concluding that fraudulent concealment by third parties would toll the running of the federal securities statute of limitations against him; (3) that there was insufficient evidence to support a judgment that he was liable to the Osternecks on the federal securities claims; and (4) that there was insufficient evidence of scienter to support a judgment against him on the state common law fraud claims.
 
 
 34
 In reply the Osternecks contend: (1) that Talley and Kellar have waived their right to assign as error the district court's instruction to the jury applying the four-year statute of limitations to the federal securities claim; (2) that any error in charging the jury on the federal securities statute of limitations was harmless; and on cross-appeal the Osternecks contend (3) that the district court abused its discretion in reducing by two-thirds the amount of prejudgment interest awarded to them.
 
 
 35
 A. Statute of Limitations for the Federal Securities Claim
 
 
 36
 Talley and Kellar assert that the district court committed several errors in determining the statute of limitations applicable to the Osternecks' federal securities claims. If Talley and Kellar had been successful in bringing themselves within the protection of the statute of limitations, thus barring the federal securities claims, the award of prejudgment interest would have to be vacated, since prejudgment interest is not available on the state law claims in this particular case. See infra, note 24.
 
 
 37
 The federal securities laws do not provide a specific statute of limitations for private rights of action asserted under Secs. 10(b), 20 and Rule 10b-5. Thus, federal courts are required to borrow the most appropriate statute of limitations from the forum state. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 788 F.2d 1500, 1502 (11th Cir.1986).
 
 
 38
 In this case, the district court originally concluded that the two-year statute of limitations provision of Georgia's Securities Act was applicable. See Osterneck v. E.T. Barwick Industries, Inc., 79 F.R.D. 47, 50-51 (N.D.Ga.1978) (applying Ga.Code Ann. Sec. 97-114 (1973)).[19] Subsequently, however, the district court accepted the Osternecks' argument that Georgia's four-year statute of limitations for common law fraud was the proper statute of limitations to borrow. In reaching this conclusion, the district court relied upon the district court opinion of Judge Shoob in the Friedlander case. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 595 F.Supp. 1442, 1443-52 (N.D.Ga.1984) (applying O.C.G.A. Sec. 9-3-31 (1982)),[20] rev'd, 788 F.2d 1500 (11th Cir.1986). Thus, when this case was sent to the jury, they were instructed that the suit was timely brought if it was initiated within four years of when the Osternecks knew or reasonably should have known through the exercise of due diligence that they had a cause of action against the defendants.
 
 
 39
 This instruction also had the effect of tolling the statute of limitations. Even under a four-year statute of limitations, the Osternecks might have been required to begin litigation by September 1973--4 years after the 1969 merger. The court's instruction permitted the jury to conclude that the suit was timely, however, if they found that the Osternecks did not know and through due diligence could not have known of the existence of their cause of action before September 4, 1971--the date four years before they filed suit.
 
 
 40
 Appellants Talley and Kellar now seek a new trial, arguing first that a two-year statute of limitations should properly have been charged to the jury. Because Talley and Kellar failed to object to the jury charge as required by Fed.R.Civ.P. 51, our review is restricted to one of plain error. Since we conclude that the district court's charge was not plainly erroneous, we reject the appellants' assertion that a new trial is necessary.
 
 
 41
 The law in this circuit is clear. Pursuant to Fed.R.Civ.P. 51, one who wishes to challenge on appeal a district court's instruction to the jury on the ground that it was an erroneous statement of the law must have objected to the instruction at trial. See Kenney v. Lewis Revels Rare Coins, Inc., 741 F.2d 378, 382 (11th Cir.1984). One may not rely on the objections made by co-parties to the action, but, rather must expressly adopt a co-parties objection as his own. Id. In the absence of an objection, a defendant is deemed to have waived his right to assign as error the district court's jury charge. We will depart from this rule only in narrow circumstances when an error is "so fundamental as to result in a miscarriage of justice," see Barnett v. Housing Authority, 707 F.2d 1571, 1580 (11th Cir.1983) (quoting Patton v. Archer, 590 F.2d 1319, 1322 (5th Cir.1979)), or when the district court's instruction amounts to plain error, see Barnett, 707 F.2d at 1581 n. 18; Johnson v. Bryant, 671 F.2d 1276, 1281 (11th Cir.1982). But see Williams v. Butler, 746 F.2d 431, 443-44 (8th Cir.1984).
 
 
 42
 In the instant case, both Talley and Kellar failed to object to the district court's statute of limitations charge. Indeed, they were not even represented at trial having, by their own stipulation, been excused from attending the lengthy proceedings. Thus, though their codefendants E & W and E.T. Barwick did object to the jury instruction, Talley and Kellar did not adopt these objections. Consequently, they have failed to preserve the issue for review on appeal unless the instruction was plainly erroneous.
 
 
 43
 Nor will it do for Talley and Kellar to argue that the district court's decision permitting them to be absent from trial somehow excuses them from their obligations pursuant to Rule 51. This would create the perverse result of according greater lenity to those who do not appear at trial than to those who do appear but merely neglect to adopt the objections of their codefendants.
 
 
 44
 Moreover, both Talley and Kellar were fully aware that the district court was reconsidering its earlier determination to charge a two-year statute of limitations. They were both served with voluminous memoranda on the subject submitted by the Osternecks and E & W, yet neither offered any reply of their own.[21] Thus, Talley and Kellar had ample opportunity to place their objections to the jury charge on the record as required by Rule 51. By failing to do so, they limited their own rights on appeal and may only receive a new trial if the jury instruction amounted to plain error.[22]
 
 
 45
 In the circumstances of this case, we cannot conclude that the trial court was plainly erroneous in charging the jury as it did. As the Supreme Court has recognized, a "court's interpretation of the contours of [an area of legal uncertainty] hardly could give rise to plain judicial error [when] those contours are ... in a state of evolving definition and uncertainty." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981); see also Barnett, 707 F.2d at 1581 n. 18; Black v. Stephens, 662 F.2d 181, 184 n. 1 (3d Cir.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).
 
 
 46
 The district court's jury instructions in this case were rendered at a time when the law concerning which statute of limitations to borrow from the forum state was uncertain. Applying a case-by-case analysis, the district court followed an earlier decision of the Friedlander district court, 595 F.Supp. at 1443-52, which chose a four-year statute of limitations in a similar securities case fraud case.
 
 
 47
 It was not until several months later that the Supreme Court, in Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), revised the method by which courts should choose the appropriate statute of limitations to borrow and determined that lower courts must analyze the question on a statute-by-statute basis. Moreover, it was not until May 1986, over one year later, that this court first had occasion to apply the Wilson standard to a case involving the appropriate statute of limitations to be borrowed for federal securities claims. In Friedlander, 788 F.2d at 1507-09, we concluded that for all federal securities cases the appropriate statute of limitations to borrow is that of the Georgia Securities Act. Thus, though Friedlander now makes clear that the district court should properly have charged a two-year statute of limitations (since that is now and was in 1969 the statute of limitations in the Georgia Securities Act), we cannot say that the court's erroneous four-year charge was plain judicial error.[23] Given the uncertain and evolving contours of the law regarding the appropriate statute of limitations to borrow, we think the district court was reasonable in its erroneous conclusion that a four-year statute of limitations should apply.[24] For these reasons,[25] Talley and Kellar's assertion that the erroneous jury charge entitles them to a new trial is without merit.[26]
 
 
 48
 Kellar also argues that the district court erred in instructing the jury that the statute of limitations was tolled until such time as the Osternecks knew or through due diligence should have known of the existence of their cause of action. This instruction, Kellar contends, improperly allowed the fraudulent concealment of third parties, such as Talley and Barwick Industries, to be attributed to him. Instead, Kellar argues, the four-year statute of limitations should not be tolled against him because he did not do any fraudulent acts which would have concealed the Osternecks' cause of action. Were we to accept Kellar's argument the statute of limitations would have expired four years after the merger and the Osternecks' suit against Kellar would be barred.
 
 
 49
 Kellar, however, is mistaken.[27] Though the limitations period for a securities claim is borrowed from the forum state "the date when a claim accrues so as to trigger the state law limitation period is a matter of federal law." Sargent v. Genesco, Inc., 492 F.2d 750, 758 (5th Cir.1974). Under federal law the statute of limitations for a fraud action may be equitably tolled. See Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (tolling limitations period in action under Federal Farm Loan Act). This equitable tolling doctrine is plainly available to federal securities law plaintiffs. Schaefer v. First National Bank, 509 F.2d 1287, 1295-96 (7th Cir.1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). Equity mandates that the statute of limitations be tolled until the fraud is discovered, Sargent, 492 F.2d at 758, provided that the plaintiff injured by the fraud "remains in ignorance of it without any fault or want of diligence or care on his part," Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123, 128 (7th Cir.1972) (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875)). Since the jury instructions plainly charged the jury with this exact standard, Kellar's contention that the district court erred is without merit.[28]
 
 B. Other Federal Issues
 
 50
 Several other issues pertaining to the federal securities judgment have been raised by the parties. First, appellant Kellar contends that there was insufficient evidence to support the judgment against him. After carefully reviewing the record, we conclude that there was sufficient credible evidence of Kellar's direct liability to allow a jury to enter judgment against him,[29] and that this issue warrants no further discussion.
 
 
 51
 Appellant Talley raises two additional issues on appeal: (1) whether the district court improperly shifted to him the burden of rebutting the Osternecks' bill of costs; and (2) whether the district court erred in permitting his codefendants to cross-examine him at trial. We have closely examined these questions and find that the assignments of error are without merit and warrant no discussion.
 
 
 52
 The final federal issue posed is the Osternecks' contention that the district court abused its discretion in awarding prejudgment interest only in the amount of $945,512.85.[30] In making this award, the district court exercised two forms of discretion. First, the court chose to award prejudgment interest at the rate of 7% annually, not compounded. This required a total interest award of over 2.8 million dollars. Though this interest award exceeded the principal judgment of $2,632,234, it was, nonetheless, the smallest interest award the trial court could have rendered. Other methods of calculation, for example compounding the principal in three-month certificates of deposit for the entire period of this litigation, would have produced interest awards of over 7 million dollars.
 
 
 53
 In its second exercise of discretion, the district court then determined that its initial interest award of some 2.8 million dollars should be reduced by two-thirds. This reduction reflected the district court's conclusion that: (1) an interest award in excess of the principal sum would be punitive; and (2) that a substantial portion of the delay in bringing this suit to a conclusion could be attributed either to actions the plaintiffs had taken or to delays inherent in the federal judicial system. Thus, the district court concluded that the defendants, having been responsible for no more than one-third of the delay in bringing this suit to trial, were responsible for only one-third of the prejudgment interest which might be awarded. Consequently, the district court awarded prejudgment interest on the federal securities claim in the amount of $945,512.85. The Osternecks challenge only this second exercise of discretion.
 
 
 54
 It is clear that whether "prejudgment interest should be awarded on a damage recovery in a [federal securities] action is a question of fairness resting within the District Court's sound discretion." Wolf v. Frank, 477 F.2d 467, 479 (5th Cir.), cert. denied, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973). Moreover, in awarding prejudgment interest, the district court must insure that the award is not punitive in nature. Norte & Co. v. Huffines, 416 F.2d 1189, 1191-92 (2d Cir.1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). Finally, because the award of prejudgment interest is compensatory rather than punitive, the award must be "tempered by an assessment of the equities." Id. at 1191. It is apparent to us that the factors relied upon by the district court are precisely the sorts of equitable considerations which should be evaluated in making a prejudgment interest award. Therefore, we cannot conclude that the district court abused its discretion in awarding the Osternecks only $945,512.85 in prejudgment interest.
 
 
 55
 For the reasons stated in the foregoing analysis, the federal securities judgment in the amount of $2,632,234 entered in favor of the plaintiffs and against Barwick Industries, Kellar and Talley with prejudgment interest in the amount of $945,512.85 is, in all respects, affirmed.[31]
 
 III. CONCLUSION
 
 56
 In sum, the appeals in Case Nos. 85-8165 and 85-8523 are DISMISSED for want of appellate jurisdiction. The judgment in Case No. 85-8593 is AFFIRMED.
 
 
 57
 AFFIRMED in part, and appeals DISMISSED in part.
 
 
 
 [1]
 The financial statements were actually prepared by Ernst & Ernst. Since that time, however, the accounting firm has changed its name to Ernst & Whinney
 
 
 [2]
 In addition to the Osternecks' notice of appeal, Talley and Kellar also filed notices of appeal on March 1, 1985. On March 15, E & W filed a cross-appeal against the Osternecks and the Osternecks cross-appealed against Talley and Kellar. On March 28, the Osternecks cross-appealed against Barwick Industries
 
 
 [3]
 In full, the notice of appeal read:
 NOTICE OF CROSS-APPEAL AGAINST M.E. KELLAR,
 BUFORD A. TALLEY, E.T. BARWICK INDUSTRIES, INC.,
 AND E.T. BARWICK FROM THAT PORTION OF THE COURT'S ORDERS
 AND AMENDED JUDGMENT WHICH PROVIDE THE PREJUDGMENT INTEREST
 AND COSTS AWARDED TO PLAINTIFFS
 NOTICE IS HEREBY GIVEN that Myles Osterneck, Guy Kenneth Osterneck, and Robert Osterneck, and Myles Osterneck and Guy Kenneth Osterneck as Trustees for the benefit of Robert Osterneck, Plaintiffs in the above-styled action, hereby cross-appeal against M.E. Kellar, Buford A. Talley, E.T. Barwick Industries, Inc. and E.T. Barwick to the United States Court of Appeals for the Eleventh Circuit, from the portions of the Court's orders dated July 1, 1985 which provide the interest and costs awarded to Plaintiffs regarding Plaintiffs' Motion for Prejudgment Interest and Bill of Costs, from that portion of the Amended Judgment filed and entered on July 9, 1985 which provides the prejudgment interest awarded to Plaintiffs and from all previous non-final or interlocutory orders and all rulings which produced and preceded these Orders and Judgments.
 This 31 day of July, 1985.
 Record on Appeal, vol. 24, Tab 511.
 
 
 [4]
 It is uncontested that the appellants Barwick Industries, E.T. Barwick, Talley and Kellar filed effective, timely second notices thereby preserving their appeals. As will appear below, however, E & W has foregone its right to appeal
 
 
 [5]
 The Osternecks argue that the defendants are estopped to deny this court's jurisdiction, having originally conceded that jurisdiction for this appeal existed. However, it is well settled that, as courts of limited jurisdiction, federal courts are obliged to undertake a jurisdictional inquiry whenever it appears that, in fact, no jurisdiction exists. Blake v. Zant, 737 F.2d 925, 926 (11th Cir.1984), on reh'g, 758 F.2d 523, cert. denied, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985); Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102 (5th Cir.1981). Thus, any prior stipulation by the parties notwithstanding, the issue of our jurisdiction is now before us and must be addressed
 
 
 [6]
 In relevant part, this rule reads:
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 ... the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of [a Rule 59 motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion....
 Fed.R.App.P. 4(a)(4).
 
 
 [7]
 The Osternecks' motion, served on February 11, 1985, was served within the ten-day time limit prescribed by Fed.R.Civ.P. 59(e). The tenth day after judgment actually fell on Saturday, February 9, and an extension until Monday was proper. Fed.R.Civ.P. 6(a)
 
 
 [8]
 One narrow exception to the general rule that motions for prejudgment interest should be treated under Rule 59(e) may exist. When the substantive law upon which the district court's judgment is based mandates an award of prejudgment interest, its omission from the judgment may be corrected as a clerical error by motion brought pursuant to Fed.R.Civ.P. 60(a). See Glick v. White Motor Co., 458 F.2d 1287, 1293-94 (3d Cir.1972). The discretionary award of prejudgment interest can never fall within this exception. See Goodman, 682 F.2d at 45-46; Scola, 618 F.2d at 153. As the Osternecks have conceded, the award of prejudgment interest in this case was wholly within the district court's discretion. Neither the federal securities law nor the state common law fraud claims litigated by the Osternecks mandated the award of prejudgment interest. See, e.g., Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); Hembree v. Georgia Power Co., 637 F.2d 423, 429-30 (5th Cir.1981). Moreover, to the extent that any such exception to the general rule exists, the former Fifth Circuit has, in dicta, rejected this exception. Warner v. City of Bay St. Louis, 526 F.2d 1211, 1213 n. 4 (5th Cir.1976) ("To the degree these cases hold that interest which is added as a matter of right can always be corrected under Rule 60(a), we believe they should be rejected.") (binding precedent, see infra note 10). Of course, when an improper legal rate of interest is set by the district court, a party may also seek relief from the legally erroneous judgment under Rule 60(b). Id. at 1212-13
 
 
 [9]
 As an alternative to this resolution, E & W urges us to adopt the per se rule recently announced by the Fifth Circuit in Harcon Barge Co. v. D & G Boat Rentals, Inc., 784 F.2d 665 (5th Cir.) (en banc), cert. denied, --- U.S. ----, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). That court concluded that any post-judgment motion served within ten days of the entry of judgment (except a motion to correct purely clerical errors under Rule 60(a)) would be treated as a motion under Rule 59(e). Id. at 667. Absent en banc reconsideration by our own court, we are not free to adopt this bright line rule. Moreover, our own distinction between collateral and noncollateral matters is sufficient for the purpose at hand and achieves the same result as that suggested by Harcon 's per se rule
 
 
 [10]
 This case was decided prior to the close of business on September 30, 1981, and is binding precedent under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)
 
 
 [11]
 Moreover, to the extent the Osternecks may have erroneously relied upon the actions of the district court, they did so despite the district court's express statements that the judgment would have to be "amended" to include prejudgment interest. See Record on Appeal, vol. 82 at 8497 ("if prejudgment interest is granted it will be--the judgment can be amended"); cf. id. vol. 24, Tab 508 (entering "amended judgment" awarding prejudgment interest). Rule 59(e) is, of course, the only vehicle by which prior district court judgments may be "amended."
 
 
 [12]
 In an effort to resuscitate their appeal, the Osternecks have made several motions. First, they seem to have requested that we order the district court to grant them an extension of time in which to file their appeal. Though the district court may entertain such a motion, an appellate court is expressly prohibited from enlarging the time for filing a notice of appeal. Fed.R.App.P. 26(b). In the alternative the Osternecks' motion may be construed as a request that this court stay its hand and permit a limited remand so that the district court may determine whether an extension of time is appropriate. This we decline to do. The need for the orderly disposition of appeals indicates that such limited remands are strongly disfavored and the Osternecks have suggested no reason why the district court could not as readily deal with a motion for an extension following our dismissal of the instant appeal. Indeed, there is currently pending before the district court a motion for an extension of time in which to file an appeal. The district court has deferred ruling on this motion pending our disposition of this appeal. United States v. Hitchmon, 602 F.2d 689, 692 (5th Cir.1979). Following this dismissal, the district court may entertain the Osternecks' motion. The grant or denial of such a motion is entrusted to the district court's sound discretion. Wansor v. George Hantscho Co., 570 F.2d 1202, 1205-07 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978); In re O.P.M. Leasing Services, 769 F.2d 911 (2d Cir.1985)
 
 
 [13]
 This case was decided prior to the close of business on September 30, 1981, and is binding precedent under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)
 
 
 [14]
 The Osternecks' cross-appeal also names Barwick Industries and E.T. Barwick and manifests an intent to appeal against those parties. Nowhere in their briefs, however, have the Osternecks sought to raise any issues on appeal against Barwick Industries. Nor could they be deemed to have raised any beyond those asserted against Talley and Kellar, Barwick Industries' codefendants. Insofar as the Osternecks' briefs on appeal raise issues challenging the validity of the verdict in favor of E.T. Barwick, those issues are properly presented to us and we have jurisdiction to consider their merits as part of Case No. 85-8593. However, these issues have no merit. See infra n. 18
 
 
 [15]
 This ruling accords with our circuit's prior decision in Kivi v. Nationwide Mutual Ins. Co., 695 F.2d 1285 (11th Cir.1983). The Supreme Court has recently confirmed that our interpretation of the law is correct. See Crawford Fitting Co. v. J.T. Gibbons, --- U.S. ----, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)
 
 
 [16]
 This statutory grant of appellate jurisdiction provides that:
 The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts....
 28 U.S.C. Sec. 1291.
 
 
 [17]
 Though E.T. Barwick and Barwick Industries filed notices of appeal, those appeals have been dismissed pursuant to Eleventh Circuit Rule 16(b). Hence, the judgment of the district court against Barwick Industries stands, and E.T. Barwick's appeal is abandoned
 
 
 [18]
 The Osternecks also assert three claims challenging the verdict in favor of E.T. Barwick: (1) that the court improperly instructed the jury on the scienter requirement for aiding and abetting liability; (2) that the court improperly instructed the jury on the elements of a Rule 10b-5 claim; and (3) that no reasonable jury could have entered a verdict in Barwick's favor
 Any error in the jury instruction on aiding and abetting scienter was harmless. The jury found that Barwick was not primarily liable to the Osternecks under Rule 10b-5. The scienter requirement for 10b-5 is less than the proper scienter requirement for aiding and abetting liability. Accordingly, since the jury found no scienter for the primary liability, it could have found none for secondary liability either. Cf. Cavalier Carpets, Inc. v. Caylor, 746 F.2d 749, 758-59 (11th Cir.1984).
 We have closely examined the Osternecks' remaining allegations of error with respect to the verdict in Barwick's favor and find that they are without merit and warrant no discussion.
 
 
 [19]
 The Georgia Securities Act of 1957 is applicable to this case. The alleged fraud occurred in 1969 prior to Georgia's revision of its securities law in 1973. However, the two-year statute of limitations for securities violations in the 1973 law is identical to that in section 13 of the 1957 Act. See McNeal v. Paine, Webber, Jackson & Curtis, Inc., 598 F.2d 888, 892 n. 9 (5th Cir.1979). The 1973 statute has since been recodified. O.C.G.A. Sec. 10-5-14 (1982)
 
 
 [20]
 This four-year statute of limitations for fraud, codified in 1982, is identical to that in effect in 1969. Ga.Code Ann. Sec. 3-1002
 
 
 [21]
 Moreover, had Talley and Kellar been present at trial they might have sought a special verdict from the jury assessing liability under a two-year statute of limitations. The record indicates that the district court would have been receptive to such a suggestion
 
 
 [22]
 Talley and Kellar can find no comfort in our decision in Lang v. Texas & P. Ry. Co., 624 F.2d 1275 (5th Cir.1980). There we concluded that the failure to object to a jury charge "may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would be unavailing." Id. at 1279 (citation omitted). Appellants have satisfied neither prong of this requirement. Though their general position on the statute of limitations issue had been made clear to the court, neither Talley nor Kellar had addressed the immediate issue presented--the applicability of the then recently decided Friedlander district court opinion. Moreover, it could not have been plain that an objection would prove unavailing. The district court had previously chosen to apply a two-year statute of limitations and might easily have concluded that the Friedlander decision was distinguishable or that its earlier decision should not, for reasons of equity, be disturbed. Thus, the limited exception to Rule 51 contemplated in Lang is not applicable to this case
 
 
 [23]
 It follows, a fortiori, that the error was not so fundamental as to result in a miscarriage of justice
 
 
 [24]
 Nor should the resolution we reach in this case be considered an inequitable one. Had a new trial been required because of an improper jury charge, it is likely, see infra note 31, that the only issue which such a new trial would resolve is the question of prejudgment interest. Though the damage judgment against Talley and Kellar was independently supported by the jury's finding that they were liable for common law fraud, prejudgment interest on the fraud judgment would not be available to the Osternecks because they failed to comply with Georgia's statutory notice and demand requirement for prejudgment interest on unliquidated damages. See O.C.G.A. Sec. 51-12-14. It was only this oversight by the Osternecks' attorneys which makes the federal statute of limitations question relevant; had the proper notice been filed an award of prejudgment interest under Georgia law would have provided an independent ground for affirmance and permitted us to pretermit the statute of limitations question. Thus, in some sense, the "inequity" of holding Talley and Kellar to the stringent requirement of Rule 51 is balanced by the "inequity" inherent in the stringent requirement of O.C.G.A. Sec. 51-12-14 whose operation is all that renders the statute of limitations question relevant in the first place
 
 
 [25]
 An additional ground for decision suggests itself. In Saint Francis College v. Al-Khazraji, --- U.S. ----, 107 S.Ct. 2022, 2025-26, 95 L.Ed.2d 582 (1987), the Supreme Court concluded that changes in a statute of limitations made pursuant to the commands of Wilson should not be applied retroactively if the change would overrule clear circuit precedent upon which the complaining party was entitled to rely and if the retroactive application would be inconsistent with the purpose of the underlying substantive statute. Cf. Goodman v. Lukens Steel Co., --- U.S. ----, ---- - ----, 107 S.Ct. 2617, 2620-22, 96 L.Ed.2d 572 (1987) (applying Wilson retroactively where circuit precedent was unclear). Plainly our decision in Friedlander revised prior clear circuit precedent. See McNeal, 598 F.2d at 892. However, the parties have not briefed the issues of justifiable reliance and consistency with the purposes of the underlying Securities Act. Thus, we decline to rest our decision upon the St. Francis analysis and content ourselves with merely noting that it tends to support our conclusion that no plain error has occurred
 
 
 [26]
 Our resolution of the issue in this manner makes it, of course, unnecessary to consider the Osternecks' argument that any error in charging a four-year limitation period was harmless
 
 
 [27]
 Consistent with our conclusion above, we review this instruction under the plainly erroneous standard. We conclude, however, that the district court instruction was a correct statement of the law and would have been sustained under any standard of review
 
 
 [28]
 Kellar attempts to distinguish this line of cases, arguing that none involve situations where the existence of the cause of action was concealed by third parties and not by the defendant who seeks to take advantage of the statute of limitations. However, a well-established line of cases articulates an equitable tolling doctrine that does not depend upon affirmative concealment after the initial fraud. Where, as in this case, concealment is inherent in the nature of the wrong done, cf. Hobson v. Wilson, 737 F.2d 1, 33-36 (D.C.Cir.1984) (characterizing such acts as self-concealing fraud), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), all that is necessary to toll the statute is a plaintiff's due diligence in seeking to discover the fraud, id. at 34 n. 103 (collecting cases applying this rule). See also, Trecker v. Scag, 679 F.2d 703, 708 (7th Cir.1982). Since only a demonstration of due diligence is necessary and since the Osternecks have made such a demonstration to the jury's satisfaction, the requirements for tolling the statute of limitations against Kellar have been satisfied
 
 
 [29]
 Kellar also contends that there was insufficient evidence to support a judgment of liability against him on the theories that he aided and abetted Barwick Industries' securities fraud or that he was a controlling person in Barwick Industries within the meaning of the securities law. Because we conclude there was sufficient evidence to support a finding of direct liability, we need not consider these issues
 
 
 [30]
 Talley and Kellar do not challenge the amount of the award. Their sole contention in this regard is that the award of prejudgment interest must be vacated because the judgment against them on the federal securities claims was based upon an improper jury instruction with respect to the statute of limitations. We have, however, rejected their contention that the federal judgment was improper. Hence, Talley and Kellar's challenge to the award of prejudgment interest must also be rejected
 
 
 [31]
 The federal securities judgment which we affirm includes prejudgment interest. Thus, the total award received by the Osternecks on their federal claim exceeds the amount they were awarded based upon their state common law fraud judgment. Consequently, because a second recovery on the state law claims would not be possible, we need not address any issues presented by the challenge to the state law judgment and we expressly decline to decide them. However, see supra note 24