Mr. Jesse PINION, Mrs. Jesse Pinion,
Plaintiffs–Appellees,

Maurice Daffron, Shirley
Daffron, Plaintiffs,

v.

DOW CHEMICAL, U.S.A.,
Defendant–Appellant.

No. 90–8508.

United States Court of Appeals,
Eleventh Circuit.

April 19, 1991.

---

Donald H. Cockrill, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Ga., for defendant-appellant.

L. Branch S. Connelly, Cook & Palmour, Bobby Lee Cook, Summerville, Ga., for plaintiffs-appellees.

Before FAY and JOHNSON, Circuit Judges, and PECK *, Senior Circuit Judge.

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

FAY, Circuit Judge:

This case presents a close jurisdictional question involving the potential application of the so-called "unique circumstances" doctrine, a judicially created exception to mandatory filing rules that sometimes justifies our exercise of jurisdiction over untimely appeals. Defendant-appellant Dow Chemical U.S.A. ("Dow") appeals the district court's denial of several post-trial motions challenging a final judgment entered in favor of plaintiffs-appellees Mr. and Mrs. Jesse Pinion ("the Pinions"). Dow's post-trial motions, however, were not timely filed, and thus did not toll the time for filing its notice of appeal under Fed.R. App.P. 4(a)(4). Normally, because appellate Rule 4's filing deadlines are mandatory and jurisdictional, a party's failure to comply with them is fatal to our ability to hear an appeal.

Dow, however, claims detrimental reliance on two district court consent orders which, in spite of the plain language of Fed.R.Civ.P. 6(b) expressly prohibiting such action, enlarged the time for filing post-trial motions under Fed.R.Civ.P. 50(b) and 59. Without the court's extension, Dow still could have filed timely post-trial motions and a timely notice of appeal. Because Dow complied fully with the extended deadlines set by the district court, and because the court eventually ruled on the merits of Dow's post-trial motions, Dow argues that these are "unique circumstances" that justify our assuming jurisdiction of this appeal.

We first consider the propriety of the district court's extension of the filing deadlines for motions under Rules 50(b) and 59(a). We conclude that the court was clearly without authority or jurisdiction to do so, thus rendering Dow's post-trial motions and notice of appeal untimely. We then consider whether Dow's untimely filed

notice of appeal is nevertheless rehabilitated by the application of the Supreme Court's equitable "unique circumstances" exception to the rigid filing requirements of Rule 6(b) and appellate Rule 4. We find that Dow's admitted inadvertence in simply failing to read Rule 6(b) cannot engender the kind of reasonable reliance contemplated by the Court's narrow "unique circumstances" exception, especially in light of the mandatory and jurisdictional nature of the filing rules at issue. We therefore must DISMISS Dow's appeal as untimely.

### I. *Procedural Background.*

On January 29, 1990, following a jury verdict in favor of the Pinions, the district court entered a final judgment against Dow in the amount of two million, four hundred and fifty thousand dollars, plus interest and costs.[1] Two days later, the district court entered a consent order, in response to a request by Dow, granting a thirty-day extension to the parties to file any post-trial motions.[2] The court entered another consent order on February 23, 1990, extending the filing deadline for post-trial motions to March 8, 1990. The Pinions expressly consented to both extensions. On March 8, in compliance with the court's deadline, Dow filed a motion for judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b) or, alternatively, for a new trial under Fed.R.Civ.P. 59. The court denied Dow's motion in an order dated May 5, 1990. Dow subsequently filed its notice of appeal with the district court on May 5, 1990.

### II. *Discussion.*

Although neither party initially raised the issue, we are of course obligated to examine our jurisdiction *sua sponte.* *See Finn v. Prudential–Bache Securities,*

---

1. The jury had awarded the Pinions four hundred and fifty thousand dollars in compensatory damages, and two million dollars in punitive damages.

2. Fed.R.Civ.P. 6(b) expressly prohibits district courts from "extend[ing] the time for taking any action" under Rules 52(b) and 59. Notwithstanding this Rule, Dow explains in its initial

brief that the "extensions were requested due to the trial schedules of Dow's trial counsel as well as to provide sufficient time to receive and review trial transcripts. Dow's counsel inadvertently overlooked the 6(b) prohibition and did not intentionally ask the trial court to enter an unauthorized order." *Brief of Appellant* at -x-, n. 3.

*Inc.*, 821 F.2d 581, 585 (11th Cir.1987), *cert. denied*, 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 262 (1988). By memorandum dated June 26, 1990, the parties were requested by the clerk of our court to respond to the jurisdictional question. The presentation of the issues was largely as follows: (1) Notwithstanding the consent of the parties, did the district court lack jurisdiction to extend the time to file post-trial motions pursuant to Rules 50(b) and 59, in light of Fed.R.Civ.P. 6(b), which expressly prohibits such an extension? (2) Even if the district court lacked jurisdiction, is Dow's notice of appeal nevertheless effective under the "unique circumstances" doctrine, which sometimes allows appellate courts to entertain untimely appeals? We consider these issues in turn below.

### A. *Timeliness of Dow's Appeal.*

■ In civil cases in which an appeal is permitted as of right from a district court to a court of appeals, a party is required to file a notice of appeal with the clerk of the district court within 30 days after the date of entry of the judgment or order from which the party is appealing. Fed.R. App.P. 4(a)(1). The Supreme Court has emphasized that the timely filing of a notice of appeal is " 'mandatory and jurisdictional.' " [3] *Houston v. Lack,* 487 U.S. 266, 282, 108 S.Ct. 2379, 2388, 101 L.Ed.2d 245 (1988) (Scalia, J., dissenting); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 61, 103 S.Ct. 400, 401, 403, 74 L.Ed.2d 225 (1982); *Browder v. Director, Dep't of Corrections of Illinois,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *United States v. Robinson,* 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960); *see Torres v. Oakland Scaven-*

*ger Co.,* 487 U.S. 312, 315, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988). As the Seventh Circuit has reiterated recently, this proposition "means what it says: if an appellant does not file his notice of appeal on time, we cannot hear his appeal." *Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1561 (7th Cir.1990) (per curiam) (en banc).

■ According to the appellate Rules, a *timely* motion filed under Fed.Rs.Civ.P. 50(b) or 59 may toll the running of time for a notice of appeal; an untimely filed post-trial motion, however, will not suffice. *See Browder,* 434 U.S. at 264–65, 98 S.Ct. at 560–61; *Kraus v. Consolidated Rail Corp.,* 899 F.2d 1360, 1362 (3d Cir.1990); *Butler v. Coral Volkswagen, Inc.,* 804 F.2d 612, 617 (11th Cir.1986); Fed.R.App.P. 4(a)(4). In order to be considered timely, post-trial motions pursuant to Rules 50(b) or 59 must be served within ten (10) days after entry of the district court's judgment. Fed.R.Civ.P. 50(b); Fed.R.Civ.P. 59(b). Further, Fed.R.Civ.P. 6(b) unequivocally states that a district court "may not extend the time for taking any action under Rules *50(b)* and (c)(2), 52(b), *59(b),* (d) and (e), 60(b), and 74(a), except to the extent and under the conditions stated in them." Fed. R.Civ.P. 6(b) (emphasis added). The Rules at issue in this case—Rules 50(b) (motion for JNOV) and 59(a), (b) (motion for new trial)—do not provide any mechanism for extending their prescribed ten-day filing deadlines.

■ Moreover, the Supreme Court has taken a restrictive view of a district court's power to extend a litigant's time to perform a jurisdictional act, *Kraus,* 899 F.2d at 1363,[4] and the mandatory nature of the

---

3. We note that the requirement that a notice of appeal be timely filed is not "jurisdictional" in the sense of subject matter jurisdiction, since such time limits and the circumstances for extending them are fixed by the Rules, which Fed.R.App.P. 1(b) declares are not to be construed to extend or limit our jurisdiction as established by law. *See* 9 Moore's Federal Practice ¶ 204.02[2] at 4–14. As mandatory preconditions to our exercise of jurisdiction, however, filing rules like Rule 4(a) are "jurisdictional" in the sense that, absent compliance, we can ac-

quire no jurisdiction of the cause even if it is otherwise within our competence. *Id.*

4. In *Browder,* for example, the state failed to file a notice of appeal within thirty days after the district court entered its order granting a petition for habeas corpus. Holding that the state's appeal was untimely, the Court found that the state's motion to stay execution and to conduct an evidentiary hearing, which had been filed 28 days after the order, did not constitute a timely Rule 52(b) or 59 motion. This was done despite the fact that the district court had granted the

filing rules "is not altered merely by the fact that the district court decided the merits of an untimely new trial [or JNOV] motion." *Butler,* 804 F.2d at 617. We have stressed repeatedly the jurisdictional, non-discretionary character of the Rule 6(b) admonition regarding the filing deadlines for such post-trial motions. *See Wright v. Preferred Research, Inc.,* 891 F.2d 886, 890 (11th Cir.1990) (per curiam) (ten day period for filing Rule 59 motion "is jurisdictional and cannot be extended by the court"); *Pate v. Seaboard R.R., Inc.,* 819 F.2d 1074, 1084 (11th Cir.1987) (ten day period. "for serving new trial motions is jurisdictional and cannot be extended in the discretion of the district court"); *Gribble v. Harris,* 625 F.2d 1173, 1174 (5th Cir. Unit A 1980) (Federal Rules of Civil Procedure establish strict 10–day delay periods for filing Rule 52 and Rule 59 motions that are jurisdictional and cannot be extended in the discretion of the district court).[5]

In this case, it is undisputed that, in the face of the express language of Rule 6(b), the district court's entry of the two consent orders purporting to enlarge the time within which Dow could file its post-trial motions was clearly beyond the court's authority. Consequently, Dow's alternative motions for JNOV or new trial, filed thirty-eight. days after the court's entry of judgment, were not timely. Unless there is some basis for an exception, Dow's notice of appeal was ineffective, since its untimely post-trial motions did not toll Fed.R.App.P. 4's thirty-day filing requirement.

### B. *The "Unique Circumstances" Exception.*

Dow acknowledges that it is "clear ... that the trial court did not have the authority to grant the extensions requested by Dow." *Brief of Appellant* at -ix-. Dow argues, however, that Rule 6(b)'s prohibition against extensions of time for filing post-trial motions must be tempered by equitable considerations. Specifically, Dow relies upon a trio of Supreme Court cases decided in the early 1960's that developed a narrow "unique circumstances" exception to the strict, jurisdictional requirements of the filing rules. *See Wolfsohn v. Hankin,* 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam); *Thompson v. INS,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam). We consider the exception more fully below.

#### 1. *Origins.*

■ Essentially, under the "unique circumstances" doctrine,

> [c]ourts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given time-

---

stay and had held a hearing before denying the state's motion on the merits.

Though the state's failure to file a timely notice of appeal and its failure to request an extension of time in which to appeal obviously reflected reliance on the district court's actions, the Court noted that the state's motion was nevertheless untimely under the Rules, and therefore could not toll the running of time to appeal under Fed.R.App.P. 4. *Browder,* 434 U.S. at 267, 98 S.Ct. at 562. The Court explained that the 1946 amendments to the Rules of Civil Procedure abolishing terms of court changed the common law rule under which a court had the power to alter or amend its own judgments during the term of court in which the original judgment was entered. The amended Rules

"confined the power of a district court to alter or amend a final order to the time period stated in Rules 52(b) and 59." *Id.* at 271, 98 S.Ct. at 564.

A comparably strict interpretation of the jurisdictional requirements established in the Federal Rules was reiterated in *Griggs,* 459 U.S. 56, 103 S.Ct. 400 (court of appeals had no jurisdiction because motion to reconsider was pending when notice of appeal was filed, even though motion was decided four days later).

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

ly notice had he not been lulled into inactivity.

*Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir.1984).

The principle was first enunciated by the Supreme Court in *Harris Truck Lines.* That case dealt with a finding under Fed.R. Civ.P. 73(a) (now Fed.R.App.P. 4(a)), which expressly allowed a district court to extend the time within which to file a notice of appeal. The district court, acting before the expiration of the thirty days automatically available for an appeal, had extended the time to sixty days, as the Rule permits, for "excusable neglect or good cause." The Seventh Circuit, however, dismissed the appeal, finding that the circumstances on which the district court relied did not amount to "excusable neglect or good cause." The Supreme Court reversed:

> In view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30–day period and then suffers reversal of that finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, *the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling.*

*Harris Truck Lines*, 371 U.S. at 217, 83 S.Ct. at 285 (emphasis added).

*Harris Truck Lines* was followed two years later by *Thompson.* Twelve days after final judgment, Thompson notified INS that he planned to file a motion for a new trial. INS raised no objection; the district court specifically stated that the new trial motion was filed "in ample time," and went on to decide the motion on the merits. 375 U.S. at 385, 84 S.Ct. at 398. Within sixty days of the denial of the new trial motion, but not within sixty days of judgment, Thompson appealed. The Court recognized that the Federal Rules, if mechanically applied, would prevent the appeal. The Court, however, allowed the ap-

peal, finding that the case fit within the *Harris Truck Lines* exception:

> The instant cause fits squarely within the letter and spirit of *Harris.* Here, as there, petitioner did an act which, if properly done, postponed the deadline for filing his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal. Accordingly, in view of these "unique circumstances," ... we grant the writ of certiorari, vacate the judgment, and remand the case to the Court of Appeals so that petitioner's appeal may be heard on the merits.

*Thompson*, 375 U.S. at 387, 84 S.Ct. at 398–99 (citations omitted).

In *Wolfsohn*, a case decided later that same term (and the case most similar to ours), the district court entered summary judgment for defendant on May 7, 1962. Four days later, the district court signed an order purportedly granting an extension of time for plaintiff to file a motion for rehearing. On June 11, the motion for rehearing was filed. It was denied on October 12, and an appeal was noticed on November 3, almost five months after the judgment was rendered. The court of appeals held that the district court was without power to enlarge the time for filing a motion for rehearing. Since the motion for rehearing was therefore untimely, the court held that the time for taking an appeal was not tolled. The Supreme Court, on authority of *Thompson* and *Harris Truck Lines*, summarily reversed without opinion the judgment of the court of appeals. 376 U.S. 203, 84 S.Ct. 699.[6]

Our Circuit has invoked the "unique circumstances" exception on only a few occasions. *Inglese v. Warden, U.S. Penitentiary*, 687 F.2d 362 (1982) involved an ap-

---

**6.** The facts and procedural history of *Wolfsohn* are found in the circuit court opinion, 321 F.2d 393 (D.C.Cir.1963). The Supreme Court's mem-

orandum opinion did not give a statement of facts.

peal from a dismissal of a petition for a writ of habeas corpus. Because the district court had entered final judgment on January 12, 1981, the 10–day period for filing a Rule 59(e) motion expired on January 22. On January 27, the district court entered an order extending the time for the prisoner to file his motion, and after a second similar extension, the petitioner eventually filed the motion on February 27. On May 1, the court denied the motion, and the prisoner appealed the judge's dismissal of the writ.

In a brief per curiam opinion, a panel of our Circuit stated that at first blush, the Rule 59(e) motion was untimely, since it was not filed within ten days after an entry of judgment, and the district court had no authority to enlarge the ten-day period. Nevertheless, citing *Thompson* and *Wolfsohn,* we held jurisdiction proper under the circumstances:

> [A]n appeal will not be dismissed as untimely when the appellant files a post-trial motion which, if timely filed, would postpone the deadline for filing his appeal; the government does not object to the timeliness of the motion; the district court indicates that the post-trial motion is timely; and the appellant relies on that indication and files his appeal within what the parties and the district court believe to be the new deadline.

*Inglese,* 687 F.2d at 363 (citations omitted).

This Circuit also applied the exception in *Willis v. Newsome,* 747 F.2d 605 (11th cir. 1984). In *Willis,* the court clerk erroneously told the appellant that if notice of appeal was mailed on the thirtieth day after judgment, the motion would be stamped on the day mailed. Appellant mailed the notice on the thirtieth day, but it arrived and was stamped on the thirty-first day. Although the original panel dismissed the appeal as untimely, on rehearing the case was remanded to the district court for purposes of determining whether Willis reasonably and in good faith relied upon a representation by the district court as to the timeliness of his notice. The court reasoned:

> If Willis was indeed relying on the district court's representation that his notice of appeal would be timely if mailed on September 21, and was thus lulled into failing to arrange for an alternative method of filing or moving for an extension of time to file, the appeal should not have been dismissed as untimely. Courts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been lulled into inactivity.

747 F.2d at 606.

Most important for our purposes is our Circuit's opinion in *Butler v. Coral Volkswagen, Inc.* There, the defendant moved under Rule 59 for new trial on the tenth day after entry of judgment, but failed to specify grounds for the motion, and requested an extension of time to file a supporting memorandum doing so. The district court granted the extension, the memorandum was submitted, and the motion was ultimately denied on the merits. Within thirty days of the denial, but more than thirty days after entry of judgment, defendant appealed. Accepting jurisdiction of the defendant's appeal, a panel of our Circuit found the case to be "virtually identical" to the scenario considered by the Supreme Court in *Wolfsohn. Butler,* 804 F.2d at 616. Thus, citing *Wolfsohn* and our earlier decision in *Willis,* the panel held:

> As in *Wolfsohn,* appellant here reasonably relied on an erroneous district court order granting an extension of time to file a new trial motion. If Coral's motion had been dismissed as it should have been, Coral would have had plenty of time to perfect its appeal. As in *Willis,* appellant here was 'lulled into inactivity' by the action of the district court. If reliance on the informal advice of the clerk's office can justify an equitable extension of the appeal period, certainly reliance on an order of the district court

granting an extension of time to amend a timely filed but insufficient new trial motion can achieve this result.

*Butler,* 804 F.2d at 617.

The panel in *Butler,* however, also went out of its way to stress the narrowness of its holding. It reiterated that the "30–day period for filing appeals is a strict requirement," and "adhere[d] to the position that an untimely filed motion for new trial does not toll the time for filing an appeal." *Id.* Nevertheless, the court felt constrained to deny appellees' motion to dismiss:

> While there is no doubt that the district court erred in entering its order of March 26, 1986 extending Coral's time in which to file its motion for new trial, we have no alternative but to deny appellee's motion to dismiss the appeal. The purported motion for new trial filed by Coral on March 14 was not a motion for new trial, the district court had no authority to extend the time for filing such a motion, and Coral did not file a timely notice of appeal. Notwithstanding these breaches of the Federal Rules of Civil Procedure ... we are required by Supreme Court precedent to allow the appeal under the "unique circumstances" doctrine. We cannot distinguish this case from *Wolfsohn v. Hankin,* 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964). We would adjure district courts not to grant motions to extend time....

804 F.2d at 617. The court then expressed its "concern in this area" by recalling Justice Clark's *Wolfsohn* dissent, which objected that the Supreme Court " 'has given trial judges the *de facto* power to grant extensions of time, directly *contra* to the definite requirements of Rules 52(b) and 59 and the command of Rule 6(b).' " *Butler,* 804 F.2d at 617–18 (quoting *Wolfsohn,* 376 U.S. at 203, 84 S.Ct. at 699 (Clark, J., dissenting)).

#### 2. *Vitality.*

In the twenty-five years since the *Harris Truck Lines* trilogy of cases, no Supreme Court case has followed its precedent. Further, it is clear that the "unique circumstances exception, which expands the district court's power to affect the jurisdic-

tional prerequisites, runs counter to the spirit of" decisions like *Browder* and *Griggs*—that is, decisions that have emphasized strict interpretations of the Federal Rules' jurisdictional requirements. *Kraus,* 899 F.2d at 1363. Indeed, Justice Scalia, dissenting in a recent case, and joined by Chief Justice Rehnquist, along with Justices Kennedy and O'Connor, appeared to reject the "unique circumstances exception" outright: "Petitioner asserts that [*Harris Truck Lines, Thompson, & Wolfsohn*] establish an equitable doctrine that sometimes permits the late filing of notices of appeal. Our later cases, however, effectively repudiate the *Harris Truck Lines* approach, affirming that the timely filing of a notice of appeal is 'mandatory and jurisdictional.' " *Houston v. Lack,* 487 U.S. at 282, 108 S.Ct. at 2388 (Scalia, J., dissenting). Not surprisingly, as the hesitant application of the exception by our own Circuit in *Butler* above suggests, the vitality of the "unique circumstances" exception—even if ultimately applied by the reviewing court—has been questioned by a number of opinions in various circuits. *Varhol,* 909 F.2d at 1562; *see, e.g., Kraus,* 899 F.2d at 1362–63; *Parke–Chapley Constr. Co. v. Cherrington,* 865 F.2d 907, 913 n. 6 (7th Cir.1989); *Smith v. Evans,* 853 F.2d 155, 160 (3d Cir.1988); *Kropinski v. World Plan Executive Council—US,* 853 F.2d 948, 951 (D.C.Cir.1988); *Fairley v. Jones,* 824 F.2d 440, 443 (5th Cir.1987); *Sonicraft v. NLRB,* 814 F.2d 385, 387 (7th Cir.1987).

Nevertheless, the "unique circumstances" exception apparently continues to exist. The most recent Supreme Court decision to mention the doctrine is *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). There, a unanimous Court affirmed an earlier opinion of our Circuit that had refused to entertain the appeal at issue in that case. Writing for the Court, Justice Kennedy refused to apply the "unique circumstances" exception, stating:

> After reviewing the record, we conclude that the Court of Appeals was correct in declining to apply our reasoning

in *Thompson* to excuse petitioner's failure to file an effective notice of appeal. By its terms, *Thompson* applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done. That is not the case here.

*Osterneck*, 489 U.S. at 179, 109 S.Ct. at 993.

Since the Supreme Court in *Osterneck* was able to deny jurisdiction by simply affirming the rationale of our Circuit's panel, the fact that the Court did not reach out explicitly to overrule the "unique circumstances" doctrine is hardly a ringing re-affirmance of it. We cannot say that a majority of the Court will not in the future repudiate the *Harris Truck Lines/Thompson/Wolfsohn* trilogy in an appropriate case. But we agree with the Seventh Circuit that the fact that the court in *Osterneck* chose to distinguish and "not overrule *Thompson* makes it overly bold for us to repudiate *Thompson*. Therefore, until the Supreme Court says otherwise, *Thompson* and the unique circumstances doctrine it pronounced remain good law." *Varhol*, 909 F.2d at 1562. As the Third Circuit has concluded:

> Although the scope of the "unique circumstances" rule remains murky following the Court's more recent emphasis on the mandatory nature of jurisdictional issues and the need for strict compliance with the time limitations imposed by the Rules, we are not free to sound the death knell for a rule enunciated by the Supreme Court and never retracted by it.

*Kraus*, 899 F.2d at 1364. Accordingly, we also must assume that the exception is still viable, and that the *Harris Truck Lines* trilogy is good law, even if its support

appears to be crumbling and its rationale suspect. "[O]nly the [Supreme] Court may overrule one of its precedents. Until that occurs, [the case] is the law." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam).

### 3. *Scope.*

Interestingly, there appears to be some disagreement among courts as to how broadly the "unique circumstances" exception is to be applied, particularly in light of the Supreme Court's recent emphasis on the mandatory nature of jurisdictional prerequisites. As the Third Circuit has observed:

> Some courts have construed the holding in *Thompson* strictly, requiring an explicit statement by the district court that the untimely motion was actually timely.... Other courts have construed *Thompson* broadly, permitting an appeal when the district court, though not specifically stating a motion was timely, acts upon the motion, *or grants an improper extension of the unwaivable time limits, thereby inducing the parties to believe the time to file a notice of appeal has been extended.*

*Smith*, 853 F.2d at 159 (emphasis added) (citations omitted).

The Seventh Circuit, for example, appears to take a very narrow view of the exception's applicability. Its formulation of the doctrine has increasingly emphasized reliance on affirmative "representations made by the district court while time remains for a party to file a notice of appeal, causing the party to refrain from filing an appeal prior to the expiration of the thirty-day period." *Parke–Chapley*, 865 F.2d at 914.[7] In *Green v. Bisby*, 869 F.2d 1070 (7th Cir.1989), a magistrate judge had en-

---

**7.** In *Parke–Chapley,* the district court made certain statements within the "temporally appropriate" period, upon which the appellant claimed reliance in filing a motion under Rule 60(b). Appellant claimed the motion should have tolled the thirty-day period for filing an appeal. In examining the record, however, the appellate court ruled:

> Had the district court told plaintiff that a motion to reconsider would postpone the running of the filing period for appeals, plaintiff's argument might have merit. But given the innocuous statement of the district court and relative ease (just reading the rules of procedure) with which counsel should have determined the consequences of a FRCP 60(b) motion, any reasonable counsel simply could not have been misled.

865 F.2d at 914.

tered a minute order granting the appellant's request for an extension of time to file a Rule 59(e) motion. *Green*, 869 F.2d at 1072. The Seventh Circuit, however, citing Justice Kennedy's recent formulation of the doctrine in *Osterneck* dismissed the appeal:

> The mere entry of a minute order, however, is not an act of affirmative representation by a judicial officer as contemplated by *Osterneck*.
>
> *Osterneck's* strict construction of the 'unique circumstances' doctrine may occasionally produce a harsh result when an erroneous extension has been granted. To avoid this scenario, we emphasize that district courts cannot grant extensions of time in a Rule 59(e) context.

*Id.*

Similarly, the Third Circuit has recognized the exception, if it exists, as being very narrow:

> We have some doubt as to whether the 'unique circumstances' exception is still viable given the strict, jurisdictional construction recently applied to the 59(e) timeliness requirement. Recent Supreme Court decisions have strictly construed the rules of procedure and prescribed time limits.
>
> . . . .
>
> Much as the Supreme Court has tended to construe procedural rules and time requirements strictly, this court has narrowly construed and sparingly applied the 'unique circumstances' exception to time requirements.... At all events we find no basis for application of the 'unique circumstances' exception in this case: we decline to apply the 'unique circumstances' doctrine absent some express, affirmative statement by the district court that a motion is timely. No such statement can be found in this record.

*Smith*, 853 F.2d at 160, 161 (footnote omitted).

Other courts seem to have been more lenient in their findings of "unique circumstances." In *Fairley v. Jones*, 824 F.2d 440, Fairley, a *pro se* litigant, sought an extension within the ten days for filing his motion for a new trial. This extension was improperly granted by the magistrate judge, and Fairley filed his motion within the extended deadline. The Fifth Circuit found the case "indistinguishable from *Wolfsohn*." *Fairley*, 824 F.2d at 443. Although explicitly hesitant to apply the "unique circumstances" exception in light of the Supreme Court's emphasis on "strict compliance with filing deadlines," the court stressed that *Wolfsohn* has not been overruled, and that under that case, "the reliance of a pro se litigant, like Fairley, on the magistrate's extension of time constitutes unique circumstances justifying our exercise of jurisdiction." *Id.* at 442.

While *Fairley* above might be distinguished, since it involved a pro se litigant, our own Circuit appears to have adopted a similarly lenient formulation of the "unique circumstances" exception in *Willis* and *Butler*. Unlike the Seventh and Third Circuits' apparent focus on *affirmative* statements of the trial court—implying that a lower court's mere signing off on an extension request within the ten-day period is not sufficient to induce reasonable reliance, *see Green*—our Circuit has stated that any "judicial action" can be enough if it indicated to the appellant that his assertion of his right to appeal would be timely, "so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been *lulled into inactivity*." *Butler*, 804 F.2d at 617 (quoting *Willis*, 747 F.2d at 606) (emphasis added).[8]

---

**8.** We note, however, that *Butler* is not the last word in our Circuit concerning the "unique circumstances" exception. As mentioned earlier, it was our Circuit's panel opinion in *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521 (11th Cir.1987) that was later affirmed by the Court in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). In

declining to apply the exception, the panel in *Osterneck* interestingly never once cited *Butler*. The panel instead cited a Seventh Circuit case for its formulation of the doctrine, reasoning: "At no time has the district court or this court ever affirmatively represented to the Osternecks that their appeal was timely filed, nor did the Osternecks ever seek such an assurance from

### C. *Application to Our Case.*

From the preceding summary, the first three steps in analyzing this case are straightforward and uncontroversial:

1) The district court was clearly without authority to grant the filing extension to Dow, and Dow's notice of appeal must therefore be considered untimely unless rehabilitated by the application of the "unique circumstances" exception.

2) Although eroding and narrowly construed, the exception still exists and has been applied in our Circuit.

3) Applicability of the exception to our facts turns on its scope.

Thus, at this point, we must consider the scope of the exception in a bit more detail.

■ Preliminarily, we note that "the power to apply a unique circumstances exception does not impose on us a requirement to do so. On the contrary, this is, at most, an equitable doctrine which enables us to consider all the relevant circumstances in deciding whether to exercise the power that we have." *Kraus*, 899 F.2d at 1365; *see also Varhol*, 909 F.2d at 1563 ("That *Thompson* is still good law does not necessarily mean that it applies in this case.").

Such an observation is important conceptually, because as with most equitable mechanisms, the real inquiry concerning the scope of the "unique circumstances" exception centers upon the *reasonableness* of the appellant's reliance on the action of the district court. Reasonable reliance has always been a necessary prerequisite to an invocation of the "unique circumstances" exception. *See Butler*, 804 F.2d at 617

("The appellant must show its reliance on the district court action was reasonable."); *see also* 9 *Moore's Federal Practice* ¶ 204.12[2], at 4–89 (noting that "unique circumstances" rule has been held inapplicable where appellant's reliance on an erroneous action by the district court was not reasonable); 4A Wright & Miller, *Federal Practice and Procedure* § 1168, at 506 (1987) (reliance on erroneous action of district court must be reasonable to justify hearing an untimely appeal). In deciding whether to apply the exception, therefore, we will "look not only to whether the party or attorney actually relied on the district court's extension ..., but also to the reasonableness of the party's conduct in its totality." *Kraus*, 899 F.2d at 1365.

For our purposes, then, the crucial jurisdictional question becomes: Was it *reasonable* for Dow to rely upon the district court's improper extension of the time for filing post-trial motions, in spite of the explicit language of Rule 6(b) prohibiting the district court from granting such an extension? When the problem is framed in this manner, we must answer "No."

First, focusing on the reasonableness of a party's reliance explains why some courts have required affirmative statements or representations from the district court before applying the "unique circumstances" exception. The more emphatic a court is in assuring a party that its filing is timely, the more reasonable it is for the party to rely on such assurances; it is then more likely that the party has been affirmatively and primarily misled by the court as to the

---

either court." *Osterneck*, 825 F.2d at 1528. In fact, it was after recounting this reasoning that the Supreme Court delivered its most recent characterization of the doctrine, which focuses on a party receiving "specific assurance by a judicial officer that his act has been properly done." *Osterneck*, 489 U.S. at 179, 109 S.Ct. at 993.

There is a slight tension here, since the formulation of the "unique circumstances" exception given by both our Circuit and the Supreme Court in *Osterneck* is potentially a much narrower construction than the earlier one given by our Circuit in *Willis* and *Butler*. Indeed, the

Third Circuit has characterized our Circuit's opinion in *Osterneck* as one that construes the "unique circumstances" exception "strictly, requiring an explicit statement by the district court that the untimely motion was timely," and, as mentioned, has set that construction up *in direct opposition* to more lenient constructions by courts that have permitted appeals in situations identical to this one, i.e. "when the district court, though not specifically stating a motion was timely, acts upon the motion, or grants an improper extension of the unwaivable time limits, thereby inducing the parties to believe the time to file a notice of appeal has been extended." *Smith*, 853 F.2d at 159.

court's authority to grant an extension.[9] Put another way, the more apparent it becomes that the party's filing error stems as much from the party's own negligence in simply not reading or inquiring about the Rules, as it does from actual reliance on some action by the district court, the circumstances become far less "unique." [10]

■ In our case, Dow starkly admits that its counsel "inadvertently overlooked the Rule 6(b) prohibition." *Brief of Appellants* at -ix- n. 2. As the Third Circuit ruled quite recently in a similar case:

> Here [counsel's] misreading or *unawareness* of the time computation principles set forth in Rule 6(a) contributed to his failure to file a timely notice of appeal. The unique circumstances doctrine has never been extended to an attorney's miscalculation of the applicable time limits, and we see no reason to do so here even if the trial judge also shared that incorrect assumption.

*Kraus,* 899 F.2d at 1365–66 (emphasis added) (footnote omitted); *see also Certain*

*Underwriters at Lloyds of London v. Evans,* 896 F.2d 1255, 1257–58 (10th Cir.1990) (where district court improperly enlarged time for filing a notice of appeal in excess of jurisdictional limits imposed by the appellate rules, appellant could not claim reasonable reliance in light of his "duty to familiarize himself with the appellate rules"; appellant "either knew or should have known" that district court had exceeded maximum allowable extension under App.Rule 4(a)(5)); *Parke–Chapley,* 865 F.2d at 914 (noting that in part due to "relative ease (just reading the rules of procedure)" with which counsel should have determined consequences of a FRCP 60(b) motion, "any reasonable counsel simply could not have been misled" by trial court's statement); *United States v. Hill,* 826 F.2d 507, 508 (7th Cir.1987) ("The Supreme Court has not held or even hinted that a defendant's own neglect, or that of his lawyer, extends a jurisdictional time limit.").[11]

**9.** In fact, a formalistic inquiry that focuses on *only* the presence or absence of affirmative statements by the district court is insufficient. For example, although we believe that the "unique circumstances" doctrine should be narrowly construed, we are unwilling to suggest, like the Seventh Circuit in *Green,* that the finding of unique circumstances will depend upon a rigid definition of what constitutes an "affirmative representation." Where the court in *Green* suggested that the entry of a minute order can never be "an act of affirmative representation by a judicial officer as contemplated by *Osterneck,*" 869 F.2d at 1072, we are not willing to read the requirement of "affirmative representation" so narrowly. It is possible to envision a scenario in which the entry of a minute or consent order *could* constitute an affirmative representation, if entered in response to a party's request for specific assurances from the court that its actions were timely. "Affirmative representations," in other words, must be considered in the totality of the circumstances, which includes the reasonableness of a party's conduct. *See Kraus,* 899 F.2d at 1365.

**10.** Indeed, on at least one occasion, an attorney actually *discovered* through research the day after the event that the trial judge had no authority to grant an extension for filing a post-trial motion, and yet in good faith refused to come forward with such knowledge. Although the attorney could have filed the motion within the proper time period, he read—or misread—a prior case articulating the exception to mean that a

district court could extend the deadline despite the strictures of the Rules.

In issuing a writ of mandamus vacating the trial court's improper grant of a new trial, the Seventh Circuit emphasized that there is "an equitable exception to the rigid time limitation when a lawyer, not knowing the law, *actually* relies on the affirmative misstatement of the district judge." *Bailey v. Sharp,* 782 F.2d 1366, 1368 (7th Cir.1986). The *Bailey* court, however, refused to apply the exception, because "it [was] clear that it was not the judge's misstatement but counsel's misreading of the law that led to his failure to file on time." *Id.*

**11.** If we were dealing with the mistakes of a pro se litigant, such as in *Fairley, Derks v. Dugger,* 835 F.2d 778 (11th Cir.1987), or *Inglese,* the justification for applying the "unique circumstances" exception would become at least more compelling because pro se litigants are arguably not charged with as much responsibility in following the filing rules. That, however, is not the situation before us. Dow was represented by competent and able counsel.

In *Reed v. Kroger Co.,* 478 F.2d 1268 (Temp. Emer.Ct.App.1973), the court considered a more blatant case of a lawyer's failure to file a notice of appeal within the jurisdictional deadline. There, in seeking to invoke the "unique circumstances" exception, counsel claimed that his reliance on the oral advice of a district court clerk excused his unfamiliarity with local practice, and that his 100–day belated filing of his notice

In light of the mandatory and jurisdictional nature of the filing rules in this case, and the drift of recent Supreme Court decisions reiterating the rules' strictness, it simply does not appear on this record that there are "unique circumstances" present to justify applying what is supposed to be a narrowly construed equitable exception. Equitable mechanisms do not exist merely to rehabilitate attorney oversight or inadvertence. The reasonableness of Dow's reliance on the action of the district court is severely undercut by the ease with which it could have read Rule 6(b). Simply scanning the Rule would have provided notice that there was an inconsistency between the Rule's text and the court's consent order.[12]

Because we find that Dow did not reasonably rely on the district court's consent orders, and thus does not fall within the "unique circumstances" exception, we must decline jurisdiction over this appeal. Although we acknowledge that *"Osterneck's* strict construction of the 'unique circumstances' doctrine may occasionally produce a harsh result when an erroneous extension has been granted," *Green,* 869 F.2d at 1072, the Supreme Court itself has indicated that it is increasingly willing to tolerate "harsh" results for failure to comply with jurisdictional · prerequisites mandated by the legislature through the drafting of the Federal Rules.[13] Further, to hold otherwise in this case would render the plain, mandatory language of Rule 6(b) a nullity.[14]

---

of appeal should nonetheless stand as valid. In dismissing the appeal, the court stated its strong belief that "professional standards require counsel to be familiar with, or to make at least a reasonable effort to learn, the rules of the courts in which they practice.... unfamiliarity with local practice does not even constitute 'excusable neglect,' let alone satisfy the higher standard recognized by the Supreme Court [for 'unique circumstances']." *Reed,* 478 F.2d at 1271–72. We believe that the *Reed* court's admonition applies with at least equal force here; at the minimum, attorneys should be charged with knowledge of the Federal Rules of Civil Procedure.

12. Our decision in *Butler* is distinguishable and does not mandate a contrary result in this case. Unlike the instant matter, *Butler* did not involve a simple grant of a filing extension by the district court. There, within the ten-day time limit, the appellant *did file* a timely new trial motion, along with an accompanying request to file a supporting memorandum containing grounds for the motion. The district court then granted an extension of time for the appellant to file the supporting memorandum. Appellee argued that the motion filed within the ten-day period was nothing more than a motion for an extension of the filing time for a new trial motion, and if this were the case, that the district court had no authority to enlarge the time for filing such a motion under Fed.R.Civ.P. 6(b). Nevertheless, we evidently did not accept such a characterization, for we found the appellant's reliance in that case to be reasonable "because [appellant] filed *a timely motion which appeared to be a valid new trial motion.* Thus, although its amended motion for new trial might have been technically untimely, the fact that some action was taken within 10 days of the judgment distinguishes this case." *Butler,* 804 F.2d at 617 (emphasis added).

The distinction is important. In the case at bar, although Dow did take "some action" within the ten-day period, the extension for which it asked was *clearly* impermissible under Rule 6(b), and Dow reasonably should have known this. The difference between *Butler* and our case is the attempt by the *Butler* appellant to accommodate Rules 6(b) and 59. In other words, a timely filed but insufficient Rule 59 motion can perhaps become sufficient if the subsequent actions of the district court indicate that there is no problem; in equitable terms, there has been a good-faith attempt at nominal compliance, and the parties have no notice of their mistake. Dow in our case cannot make the same argument if they never once glanced at Rule 6(b)—it would have had immediate notice that its request for an explicit enlargement of the filing deadline could not have been granted.

13. In *U.S. v. Locke,* the Court observed that "[f]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." 471 U.S. 84, 101, 105 S.Ct. 1785, 1796, 85 L.Ed.2d 64 (1985).

14. Judge Easterbrook, concurring in *Bailey v. Sharp,* 782 F.2d at 1371, essentially suggests that the express prohibition of extension of time under Rule 6(b) should *always* preclude arguments of reasonable reliance on erroneous district court action:

Rule 6(b) vitiates explicit orders extending the time. The order cannot control just because people may rely on it; Rule 6(b) says that they may not rely. Unless every effort to extend the time is a 'special circumstance' justifying the extension—in which event Rule 6(b) is a dead letter, each violation is a self-

The district court's jurisdiction ran out after ten days, and it was powerless either to give either party more time, or to grant a new trial on its own motion. Absent unique circumstances, a "court without jurisdiction is a court without power, no matter how appealing the case for exceptions may be." *Bailey*, 782 F.2d at 1373 (citing *Professional Managers' Ass'n v. United States*, 761 F.2d 740 (D.C.Cir.1985) (Easterbrook, J., concurring). Consequently, we too lack the power to hear this case on the merits.

### III. *Conclusion.*

For the foregoing reasons, the appeal is DISMISSED.

JOHNSON, Circuit Judge, dissenting:

The majority has concluded that the unique circumstances doctrine is viable and binding upon this Court. With this conclusion, I, of course, agree. The majority, however, has concluded that this doctrine does not apply to the case at bar. With this conclusion, I cannot agree.

The majority conducts a thorough and exhaustive discussion of the case law interpreting the unique circumstances doctrine. At the end of this discussion, the majority frames the test as an analysis of whether it was "reasonable for Dow to rely upon the district court's improper extension" of the relevant time limits. (emphasis deleted).

Initially, I note that the majority correctly holds, in the text of its opinion, that our

fulfilling prophecy—the district court's order ... had no effect. The rules were designed to be applied mechanically, and that design binds us.

....

It is too easy for a litigant to say that he 'relied' on a mistaken decision by a judge to grant more time than the rules allow. Rule 6 means that one may *not* rely on this sort of decision.

*Id.* at 1371–72 (Easterbrook, J., concurring) (emphasis in original) (citations omitted); *see also Varhol*, 909 F.2d at 1575 (Manion, J., concurring) ("[A] lawyer who ... reads the federal rules cannot actually rely on the [trial court's] misstatement because he knows (or should know) the judge is wrong.").

Because Judge Easterbrook was attacking the viability of the "unique circumstances" excep-

Circuit, unlike the Seventh and Third Circuits, has never required an affirmative oral or written statement from the district court assuring the appellant that his or her filing was adequate. The majority notes that our Circuit's case law supports the notion that judicial action by the district court, such as the grant of a motion, may be sufficient to invoke the doctrine. Our Circuit's case law is well founded in that the Supreme Court has specifically allowed judicial action by the district court, without any contemporaneous oral or written assurances, to be sufficient to constitute a basis for invoking the unique circumstances doctrine. *See Wolfsohn v. Harkin*, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam). The majority, however, tempers its reading of our case law in its footnote 8 and in its application of the test in section C of its opinion.

In footnote 8, the majority implies that language found in *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521, 1528 (11th Cir.), *aff'd sub nom. Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), suggests a shift in the requirements of the doctrine. The Eleventh Circuit decision in *Osterneck* stated that no judicial officer affirmatively represented or assured the appellant that the filing was timely. *Osterneck*, 825 F.2d at 1528. The Supreme Court adopted similar language in its affirmance of our Court's decision. *See Osterneck*, 489 U.S. at 179, 109 S.Ct. at 993. However, contrary to the implications of the majority's

tion itself, his position is necessarily broader than the one we adopt today. As mentioned earlier, the exception, until explicitly overruled by the Supreme Court, continues to exist, and we will continue to apply it in truly unique cases "where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck*, 489 U.S. at 179, 109 S.Ct. at 993. In this case, for example, if Dow had read Rule 6(b), had inquired of the district court whether it possessed the power, in spite of the limitations of the Rules, to grant an extension, and had received the extension with "specific assurances" from the court that timeliness would not be a concern, then the case for applying the exception would be far more compelling.

footnote 8, there is no reason to imply that either our Court or the Supreme Court has imposed a requirement that appellants wishing to invoke the doctrine must point to a specific oral or written statement by the district court assuring the party that the filings complied with all the relevant procedures. The appellant in *Osterneck* could not point to *any* judicial action or statement that caused it to delay the filing of its notice of appeal. *Osterneck*, 825 F.2d at 1529. The majority's implied reading of *Osterneck* in fact *sub silentio* overrules both *Butler v. Coral Volkswagen, Inc.*, 804 F.2d 612 (11th Cir.1986), and *Wolfsohn, supra,* since both of these cases allowed judicial actions, without any contemporaneous judicial statements, to constitute a unique circumstance.[1] Absent an express statement by the later courts overruling the prior precedent, we should attempt to read the opinions as being consistent with each other. The two opinions are consistent if we recognize that a judicial action, such as the approval of an order, can constitute an affirmative representation by the court.

While the majority, in the formulation of its test, acknowledges that judicial action, without more, is sufficient to invoke the doctrine, the majority, in the application of its test, places significant stock in the district court's failure to make any "emphatic" assurances. The majority concludes that absent any such assurances, it becomes "apparent ... that the party's filing error stems as much from the party's own negligence." The majority holds that in such a case, the doctrine is inapplicable. Essentially the majority's opinion can be fairly read as holding that if the litigant is not pro se (*see* majority's note 11) and if the court does not make any "emphatic" assurances then the litigant will be presumed not to have established the exist-

ence of unique circumstances. This is not the law of our Circuit. In *Butler* we found unique circumstances and in *Wolfsohn* the Supreme Court found unique circumstances despite the fact that in both cases the appellants were presumably represented by able counsel and despite the fact that the district courts only signed an order in the two cases and did not assure counsel that the orders were timely filed.

The majority's opinion is a departure from the law of our Circuit in one other significant way. The majority presumes that, with the exception of cases involving pro se litigants and cases where the district court emphatically assures the litigants, litigants who rely upon judicial actions will be unable to prove the reasonableness of their reliance. The majority reasons that most parties could have avoided the situation in the first place by simply reading the rules.[2] While it is true that if Dow had properly read the rules it would not be in the present predicament, the same is true of *every* litigant who seeks to invoke the unique circumstances doctrine. By presuming that the actions of the parties were unreasonable for failing to read the rules, the majority has invoked a presumption which significantly narrows the application of the doctrine.

The majority narrows the doctrine because it confuses the reasonableness of the appellants in filing the initial motion for an extension of time with the reasonableness of the appellants in relying upon the district court's granting this motion. While it is clear that filing the motion for an extension of time, in direct contravention of Fed. R.Civ.P. 6(b), was negligent, it is less clear that relying on the district court's grant of this motion was negligent. Our Circuit, in *Butler v. Coral Volkswagen, Inc., supra,* noted that the two questions are in fact separate and that only the second question

---

1. It would be illogical to view the panel opinion in *Osterneck* as overruling *Butler* because panels lack that power, *see United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986). Moreover, these cases were decided only eleven months apart and two members of the *Butler* panel sat on the *Osterneck* panel.

2. The majority does not explain why a party's reliance becomes more reasonable when the

district court is more emphatic. If a party is to be held to the rules when the judge signs an order it is unclear why a party should be excused from the rules when the party relies upon an informal oral representation from a filing clerk. *See Willis v. Newsome,* 747 F.2d 605 (11th Cir.1984).

is relevant to the unique circumstances doctrine. *See Butler*, 804 F.2d at 615 n. 5 & 617. The focus of the unique circumstances doctrine is on why the appellant failed to timely file his notice of appeal, not on why the appellant thought he or she could file the underlying motion. In *Butler*, while we condemned the appellant's actions in filing a motion requesting an extension of time and we condemned the district court's grant of the motion, we held reasonable the appellant's reliance upon the district court's actions.[3] As we held in *Butler*, "if [the appellant's] motion had been dismissed [by the district court] as it should have been, [the appellant] would have had plenty of time to perfect its appeal. As in *Willis*, appellant here was 'lulled into inactivity' by the action of the district court." *Butler*, 804 F.2d at 617 (quoting *Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir.1984)). Contrary to the majority's presumption of unreasonableness in the case at bar, the *Butler* panel adopted an opposite presumption. The *Butler* court held reasonable the reliance on the judicial action and stated that "[n]otwithstanding these breaches of the Federal Rules of Civil Procedure ... we are *required* by Supreme Court precedent to allow the appeal under the 'unique circumstances' doctrine." *Butler*, 804 F.2d at 617 (emphasis added); *compare id. with* majority opinion at 1532 ("the power to apply a unique circumstances exception does not impose on us a requirement to do so").

The proper test for whether the unique circumstances doctrine should be applied to the case at bar is found in *Willis v. Newsome* where we wrote:

Courts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been lulled into inactivity.

*Willis*, 747 F.2d at 606. It is undisputed that (1) the judicial action indicated that appellant's right to appeal notice would be timely and (2) the judicial action occurred when appellant could still timely file the notice. What is disputed is whether appellant "reasonably and in good faith" relied upon the judicial action. I believe that appellant's reliance was both reasonable and in good faith. There is no indication that Dow was aware that the district court lacked the power to grant the motion for an extension of time to file the new trial motion. More importantly, Dow could easily have submitted a timely notice of appeal if it was aware of the proper deadlines, and Dow's delay gained it little.

While I am aware that certain jurists believe the equitable doctrine of unique circumstances is a questionable doctrine and therefore ought to be narrowed, this is not the case for such narrowing. The majority's decision that Dow acted unreasonably creates a large windfall for the Pinions. Unlike other cases, such as *Butler*,[4] the Pinions' hands are far from clean. In the case at bar, the Pinions and Dow entered a consent agreement, later ratified by the court, allowing Dow to file an untimely

---

3. The majority's error in confusing the reasonableness of moving for an extension of time with the reasonableness of relying upon a district court order mistakenly leads it to distinguish *Butler* from the case at hand. The majority compares the papers filed by Coral Volkswagen in *Butler* to the papers filed by Dow in the case at hand. *See* majority note 12. The distinctions between the motions are irrelevant. What is relevant is that the district court mistakenly granted the appellant an extension of time to file a new trial motion, and while the untimely motion was pending, the time to file a notice of appeal expired because no valid new trial motion stayed the time to file the appeal.

Viewed through this lens, *Butler* is "on all fours" with the case at bar. If the question before our Court is whether it was reasonable to file the initial motion asking for an extension, *Butler* would be distinguishable. But, regardless of what was filed, if the question is whether it was reasonable for the appellant to rely upon the judge's actions, then *Butler* is indistinguishable.

4. In *Butler*, the appellees promptly objected to the district court's order granting the appellants an extension of time in which to file the motion for a new trial. The appellees protested that the district court lacked the power to grant the extension of time. *See Butler*, 804 F.2d at 613.

new trial motion. Now, with a $2.45 million judgment at stake, the Pinions are in the unseemly position of attacking that consent agreement. It is not proper to manipulate this equitable doctrine to benefit the Pinions in contravention of the basic principle of equity that "he [or she] who comes into equity must come with clean hands." *New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.*, 291 F.2d 471, 473 (5th Cir.1961).

Finally, I am concerned about the implication of the majority's holding. In the case at hand, a motion was placed before the district court and the court ruled on that motion by issuing an order. The majority finds that we lack jurisdiction because it was unreasonable for Dow to rely upon this order. Whether or not an order is correct, it is still binding upon the parties as the law of the case until an appellate court reviews that order. It seems to be, at the very least, bad policy for appellate courts to instruct litigants not to rely upon district court orders. Though I do not intend to point out a parade of horribles, the majority's holding encourages parties to second guess district courts and file needless notices of appeals even when the parties do not suspect that the district court is in error.

I therefore would find jurisdiction, and I believe we should proceed to the merits.